**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

In re:

    Sharon Louise Berbick,                 Case No.: 16-19263-JKO

        Debtor.                       Chapter 13

_____/

**MULTIBANK 2009-1 RES-ADC VENTURE, LLC'S**
**OBJECTION TO EXEMPTIONS**

Creditor Multibank 2009-1 RES-ADC Venture, LLC ("Multibank") files this its Objection to Exemptions, and in support states as follows:

1.      On or around October 17, 2003, Charles B. Berbick and Sharon L. Berbick ("Debtor") took title to real property located in 28 Fanshawe Ln, Flagler County, Florida pursuant to Warranty Deed ("Fanshawe Ln Property").  Attached hereto as **Exhibit 1** is a true and correct copy of the Fanshawe Ln Property Warranty Deed.

2.      On or about October 20, 2004, the Debtor executed and delivered the Promissory Note ("Note 1") in favor of Ocala National Bank to evidence a loan from the bank to, *inter alia*, the Debtor.  Attached hereto as **Exhibit 2** is a true and correct copy of Note 1.

3.      On or about October 30, 2004, the Debtor executed and delivered the Promissory Note ("Note 2") in favor of Ocala National Bank to evidence a loan from the bank to, *inter alia*, the Debtor.  Attached hereto as **Exhibit 3** is a true and correct copy of Note 2.

4.      On or about November 30, 2004, the Debtor executed and delivered the Promissory Note ("Note 3") in favor of Ocala National Bank to evidence a loan from the bank to, *inter alia*, the Debtor.  Attached hereto as **Exhibit 4** is a true and correct copy of Note 3.

5.      Note 1, Note 2 and Note 3 all contained the following provision:

{M1209102.1}

> GARNISHMENT: "[Debtor] consents to the issuance of a continuing writ of garnishment or attachment against [Debtor's] disposable earnings, in accordance with Section 222.11, Fla. Stat.s, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender."

6.      On April 27, 2016, the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida entered the Final Judgment against, *inter alia*, the Debtor in the amount of $105,054.25 based on the Debtor's liability pursuant to Note 1, Note 2 and Note 3.

7.      On June 30, 2016, the Debtor filed a petition for relief under chapter 7 of the United States Bankruptcy Code.

8.      The Fanshawe Ln Property is listed on the Debtor's Schedule A-1.3 (ECF#7) and is valued in the amount of $8,000.00.  Pursuant to zillow.com, the Fanshawe Ln Property is valued in the amount of $238,595.00.  Attached hereto as **Exhibit 5** is a true and correct copy of the Fanshawe Ln Property zillow.com page.

9.      The Debtor's Schedule B-17 (ECF#7) lists three accounts with a total value of $6,604.03 (hereinafter "Bank Accounts").

10.     The Debtor claims on her Schedule C (ECF#7) the Bank Accounts as exempt pursuant to Fla. Stat. Ann. § 222.11(2)(a).

11.     Multibank objects to the Debtor's claimed exemptions in the Bank Accounts and Fanshawe Ln Property.

12.     First, relating to the Bank Accounts, the Debtor is not entitled to the head of household exemption.  As detailed above, the Debtor executed and delivered Note 1, Note 2 and Note 3, which is the underlying obligation for the Final Judgment. Pursuant to the Fla. Stat. § 222.11, a judgment debtor could waive the exemption for wage garnishment for a head of family as authorized by § 222.11(2)(b). Florida courts have enforced a waiver of the exemption for

{M1209102.1}

wage garnishment for a head of family on a promissory note that had the exact same waiver language.  *See USAMERIBANK v. Klepal*, 100 So. 3d 56, 61 (Fla. 2d DCA 2011).

13.     Further, pursuant to Fla. Stat. § 222.11(2)(b), the head of household exemption applies to "[d]isposable earnings of a head of a family."  Fla. Stat. § 222.11(1)(c) defines "Head of family" as any natural person who is providing more than one-half of the support for a child or other dependent.

14.     The Debtor's Schedule J (ECF#7) Question 2 states that the Debtor has no dependents.

15.     Accordingly, Multibank seeks an order from this Court sustaining Multibank's objection to the Debtor's claimed exemption in the Bank Accounts.

16.     Regarding the Fanshawe Ln Property, the Debtor claims this property as exempt pursuant to Fla. Const. art. X, § 4(a)(1);  Fla. Stat. Ann. §§ 222.01 & 222.02.

17.     However, the Debtor's Petition (ECF#1) states that the Debtor resides at "2313 SW 85th Way, Hollywood, FL 33025."

18.     Additionally, the Debtor works at Memorial Healthcare System, 3501 Johnson Street Hollywood, Florida 33021- which is approximately two hundred seventy two (272) miles from the Fanshawe Ln Property. Attached hereto as **Exhibit 6** is a true and correct printout from the Memorial Healthcare System website demonstrating that the Debtor works in Hollywood, Florida.

19.     In Florida, "[t]he homestead character of a property 'depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence.'" *In re Bennett*, 395 B.R. 781, 789 (Bankr.M.D.Fla.2008) (quoting *Hillsborough Investment Co. v. Wilcox*, 152 Fla. 889, 13 So.2d 448, 452 (1943)); *see also In re Lee*, 223 B.R.

594, 5989 (Bankr. M.D. Fla. 1998)( homestead is established by actual occupancy of the subject property accompanied by the intent to reside in the property as one's homestead). Thus, homeowners seeking to qualify for the homestead exemption must meet both an objective and subjective test. First, they must actually use and occupy the home. Second, they must express an actual intent to live permanently in the home. *In re Franzese*, 383 B.R. 197, 203 (Bkrtcy.M.D.Fla.2008) (citing *In re Brown*, 165 B.R. 512, 514 (Bankr.M.D.Fla.1994)) (holding homestead established by actual use and occupancy coupled with an actual intent to live permanently in a house).

20.     Here, the Debtor does not actually use and occupy the Fanshawe Ln Property as her homestead.  The Debtor, under penalty of perjury, stated that she lives and works in Broward County, Florida. *See* Petition (ECF#1) and Schedule I (ECF#1).

21.     Second, she has demonstrated subjectively that she intends to remain permanently in Broward County, Florida.  If the Fanshawe Ln Property, located in Flagler County, Florida, was her homestead and the debtor was currently residing in the property, the Debtor's case would have been filed in the United States Bankruptcy Court for the Middle District of Florida.

22.     In addition to this limited objection, Multibank specifically reserves any and all rights to supplement this objection or file further objections to exemptions in the event other or further information is uncovered through the discovery process.

WHEREFORE, Multibank 2009-1 RES-ADC Venture, LLC respectfully requests an order sustaining the objection to the Debtor's claimed exemptions in the Bank Accounts and the Fanshawe Ln Property, and awarding such further relief as deemed just and proper.

Dated:  August 3, 2016          I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

{M1209102.1}

JONES WALKER LLP
*Attorneys for Multibank 2009-1 RES-ADC Venture, LLC*
201 Biscayne Blvd., Suite 2600
Miami, Florida 33131
Email:  bturner@joneswalker.com
Telephone:  (305) 679-5700
Facsimile:  (305) 679-5710


By: __*/s/ Barry Turner*_____
        Barry S. Turner, Esq.
        Florida Bar No. 85535


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties receiving service via ECF and US Mail as indicated below, including those listed below, on August 3, 2016.

### ECF:

- **Samantha Carr**    sacarr@logs.com, electronicbankruptcynotices@logs.com
- **Keith S Labell**    klabell@rasflaw.com, bkyecf@rasflaw.com
- **Diego Mendez**    info@mendezlawoffices.com,
  ana.solano@mendezlawoffices.com;mlolawbestcase@gmail.com
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
- **Robin R Weiner**    ecf@ch13weiner.com;ecf2@ch13weiner.com


### Mail:

Diego Mendez, Esq.
POB 228630
Miami, FL 33172


By: __*/s/ Barry Turner*_____
        Barry S. Turner, Esq.

{M1209102.1}

# Exhibit 1

Record & Return to:
American Pioneer

Prepared By: Buddy Hughes
Professional Title Agency, Inc. 112 W. Indiana Ave.
2 Pine Lakes Parkway North, Suite 6
Palm Coast FL 32137          Deland, FL 32720
incidental to the issuance of a title insurance policy.
File Number: f0823
Parcel ID# 07-11-31-7010-00310-0020
Grantee(s) SS#

REC: 6—
DOC: 105.00
INT: ____

Inst No:2003018456  Date:04/07/2003
Doc Stamp-Deed :    105.00
GAIL WADSWORTH, FLAGLER Co.   Time:06:48
Book: 915   Page: 669  Total Pgs:   1

*WARRANTY DEED*
(INDIVIDUAL)

OFF
REC 0915 PAGE 0669

This *WARRANTY DEED*, dated  03/28/2003  by
        VINCENT A. MAINIERO ~~~ 3/31/03
whose post office address is:
        28 BREWSTER ROAD, MILFORD  CT  06460
hereinafter called the GRANTOR, to
        CHARLES B. BERBICK and SHARON L. BERBICK, husband and wife
whose post office address is:
        28 FANSHAWE LANE PALM COAST FL 32137
hereinafter called the GRANTEE:
(Wherever used herein the terms "Grantor" and "Grantee" include all parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations.)
*WITNESSETH:*  That the GRANTOR, for and in consideration of the sum of $10.00 and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the GRANTEE, all that certain land situate in **FLAGLER** County, Florida, viz:

**Lot 2, of Block 31, of Palm Coast, Map of FLORIDA PARK, Section 10, according to the plat thereof, recorded in Plat Book 6, Pages 43 through 53, inclusive, of the Public Records of Flagler County, Florida.  As amended by instrument recorded in Official Records Book 35, at Page 528, of the Public Records of Flagler County, Florida.**

**This is does not constitute the homestead of the property of the Grantor. It is vacant land.**

*SUBJECT TO* covenants, conditions, restrictions, reservations, limitations, easements and agreements of record, if any; taxes and assessments for the year 2003 and subsequent years; and to all applicable zoning ordinances and/or restrictions and prohibitions imposed by governmental authorities, if any;

*TOGETHER* with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

*TO HAVE AND TO HOLD*, the same in fee simple forever.

*AND THE GRANTOR* hereby covenants with said GRANTEE that except as above noted, the GRANTOR is lawfully seized of said land in fee simple; that the GRANTOR has good right and lawful authority to sell and convey said land; that the GRANTOR hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever.

IN WITNESS WHEREOF, GRANTOR has signed and sealed these presents the date set forth above.

SIGNED IN THE PRESENCE OF THE FOLLOWING WITNESSES:

Witness #1 Signature: _Marie P. MacPhail_
Witness #1 Print Name: _Marie P. MacPhail_

Witness #2 Signature: _Carol A Pollard_
Witness #2 Print Name: _CAROL A POLLARD_

_Vincent A. Mainiero_
VINCENT A. MAINIERO ~~~ 3/31/03

State of **Connecticut**
County of _New Haven_

I am a notary public of the state of ___Connecticut___ and my commission expires: _10-31-03_
THE FOREGOING INSTRUMENT was acknowledged before me on **03/28/2003** by:
        **VINCENT A. MAINIERO** ~~~ 3/31/03
who is personally known to me or who has produced ___drivers license___ as identification.

Notary Seal                        Signature: _Marie P. MacPhail_

MARIE P. MACPHAIL  Notary Public
NOTARY PUBLIC
MY COMMISSION EXPIRES OCT. 31, 2003

# Exhibit 2

 **PROMISSORY NOTE**

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $27,450.00 | 10-20-2004 | 10-20-2009 | 10870701 | | | 037 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** CHARLES BERBICK (SSN: ████████)
SHARON BERBICK (SSN: ████████)
730 SW 94TH TER
PENBROKE PINES, FL 33025

**Lender:** OCALA NATIONAL BANK
MAIN OFFICE
112 N MAGNOLIA AVENUE
OCALA, FL 34475

Principal Amount: **$27,450.00**         Interest Rate: **6.250%**         Date of Note: **October 20, 2004**

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to OCALA NATIONAL BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Twenty-seven Thousand Four Hundred Fifty & 00/100 Dollars ($27,450.00), together with interest at the rate of 6.250% per annum on the unpaid principal balance from October 20, 2004, until paid in full.

**PAYMENT.** I will pay this loan in 59 regular payments of $235.26 each and one irregular last payment estimated at $21,197.54. My first payment is due November 20, 2004, and all subsequent payments are due on the same day of each month after that. My final payment will be due on October 20, 2009, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $10.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: OCALA NATIONAL BANK, MAIN OFFICE, 112 N MAGNOLIA AVENUE, OCALA, FL 34475.

**LATE CHARGE.** If a payment is 15 days or more late, I will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 18.000% per annum, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under the Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by and interpreted in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $25.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GARNISHMENT.** I consent to the issuance of a continuing writ of garnishment or attachment against my disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** I acknowledge this Note is secured by First mortgage dated October 20, 2004.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: OCALA NATIONAL BANK, MAIN OFFICE, 112 N MAGNOLIA AVENUE, OCALA, FL 34475

Loan No: 710870701

## PROMISSORY NOTE
### (Continued)

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. I do not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to me. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

x _____
CHARLES BERBICK

_____
SHARON BERBICK

---

### Florida Documentary Stamp Tax

Florida documentary stamp tax in the amount required by law has been paid with respect to this Note on the Mortgage securing this Note.

# Exhibit 3

 PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $18,000.00 | 10-30-2004 | 10-30-2009 | 71087180 | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * *" has been omitted due to text length limitations.

**Borrower:** CHARLES BERBICK (SSN: ▉▉▉▉)
SHARON BERBICK (SSN: ▉▉▉▉)
700 SW 94TH TER
PEMBROKE PINES, FL 33025

**Lender:** OCALA NATIONAL BANK
MAIN OFFICE
112 N MAGNOLIA AVENUE
OCALA, FL 34475

Principal Amount: $18,000.00          Interest Rate: 6.250%          Date of Note: October 30, 2004

PROMISE TO PAY. I ("Borrower") jointly and severally promise to pay to OCALA NATIONAL BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eighteen Thousand & 00/100 Dollars ($18,000.00), together with interest at the rate of 6.250% per annum on the unpaid principal balance from October 30, 2004, until paid in full.

PAYMENT. I will pay this loan in 59 regular payments of $164.34 each and one irregular last payment estimated at $13,899.72. My first payment is due November 30, 2004, and all subsequent payments are due on the same day of each month after that. My final payment will be due on October 30, 2009, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

PREPAYMENT; MINIMUM INTEREST CHARGE. I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $10.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: OCALA NATIONAL BANK, MAIN OFFICE, 112 N MAGNOLIA AVENUE, OCALA, FL 34475.

LATE CHARGE. If a payment is 15 days or more late, I will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 18.000% per annum. If and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

DEFAULT. I will be in default under this Note if any of the following happen:

Payment Default. I fail to make any payment when due under this Note.

Break Other Promises. I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

False Statements. Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

Death or Insolvency. Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

Taking of the Property. Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes hiring of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether this claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

Defective Collateralization. This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Collateral Damage or Loss. Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party or any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Note will be governed by and interpreted in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

DISHONORED ITEM FEE. I will pay a fee to Lender of $25.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

GARNISHMENT. I consent to the issuance of a continuing writ of garnishment or attachment against my disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

COLLATERAL. I acknowledge this Note is secured by First mortgage dated October 30,2004.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: OCALA NATIONAL BANK, MAIN OFFICE, 112 N MAGNOLIA AVENUE, OCALA, FL 34475

PROMISSORY NOTE
(Continued)

Loan No: 710871801                                                                                                     Page 2

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. I do not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to me. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____              _____
   CHARLES BERBICK                                           SHARON BERBICK

---

**Florida Documentary Stamp Tax**

Florida documentary stamp tax in the amount required by law has been paid with respect to this Note on the Mortgage securing this Note.

# Exhibit 4

# PROMISSORY NOTE 

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $9,450.00 | 11-30-2004 | 11-30-2009 | 710891601 | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * " has been omitted due to text length limitations.

Borrower: **CHARLES BERBICK (SSN: 59█████**
**SHARON BERBICK (SSN: 1█████**
730 SW 94TH TER
PENBROKE PINES, FL 33025

Lender: OCALA NATIONAL BANK
MAIN OFFICE
112 N MAGNOLIA AVENUE
OCALA, FL 34475

---

**Principal Amount:  $9,450.00          Interest Rate:  6.250%          Date of Note:  November 30, 2004**

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to OCALA NATIONAL BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Thousand Four Hundred Fifty & 00/100 Dollars ($9,450.00), together with interest at the rate of 6.250% per annum on the unpaid principal balance from November 30, 2004, until paid in full.

**PAYMENT.** I will pay this loan in 59 regular payments of $81.03 each and one irregular last payment estimated at $7,267.26. My first payment is due December 30, 2004, and all subsequent payments are due on the same day of each month after that. My final payment will be due on November 30, 2009, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $10.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: OCALA NATIONAL BANK, MAIN OFFICE, 112 N MAGNOLIA AVENUE, OCALA, FL 34475.

**LATE CHARGE.** If a payment is 15 days or more late, I will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 18.000% per annum, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by and interpreted in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $25.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GARNISHMENT.** I consent to the issuance of a continuing writ of garnishment or attachment against my disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** I acknowledge this Note is secured by Mortgage dated November 30,2004.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: OCALA NATIONAL BANK, MAIN OFFICE, 112 N MAGNOLIA AVENUE, OCALA, FL 34475.

Loan No: 710891601

**PROMISSORY NOTE**
(Continued)

Page 2

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. I do not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to me. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
   CHARLES BERBICK

X _____
   SHARON BERBICK

---

**Florida Documentary Stamp Tax**

Florida documentary stamp tax in the amount required by law has been paid with respect to this Note on the Mortgage securing this Note.

LASER PRO Lending, Ver. 5.24.10.002 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - FL H:\CFI\LPL\D20.FC FR-271 PR-4

# Exhibit 5



8/1/2016                                    28 Fanshawe Ln, Palm Coast, FL 32137 | Zillow

CORRECT HOME FACTS   ♡ SAVE   ⊘ HIDE   SHARE   MORE ⌄                    ⤢ EXPAND   ✕ CLOSE

**Public**    Owner   NEW

# 28 Fanshawe Ln,
Palm Coast, FL 32137

**-- beds · 3 baths · 2,687 sqft**  Edit

Edit home facts for a more accurate Zestimate.

**OFF MARKET**
Zestimate®:
$238,072
Price this home
Rent Zestimate®:
$1,500/mo

Est. Refi Payment
$826/mo
**See current rates**

Thinking About Selling?
Find a local agent who can give you a professional estimate of your home value.

**GET A PROFESSIONAL ESTIMATE**

☑ **Edmund Giancola**                      PREMIER AGENT
★★★★★ (5)
1 Recent sales

☐ **Laurent Alves**                         PREMIER AGENT
★★★★★ (15)
15 Recent sales

☐ **Alina Pekarsky**                        PREMIER AGENT
★★★★★ (66)
93 Recent sales

👤 Your Name
📞 Phone
✉ barry.turner@gmail.com

I own this home and would like a professional estimate at 28 Fanshawe Ln, Palm Coast, FL 32137.

Contact Agent

Learn how to appear as the agent above

# Exhibit 6

# Memorial Healthcare System

Search

Nuestro Sitio En Español

- About Memorial Healthcare System
- Health Services
- Patients & Visitors
- Find a Doctor
- Locations
- Health Library
- Career Center

**Research / Clinical Trials**

- Office of Human Research Home
- Patients
- Physicians
  - Who We Are
  - Our Services
  - Investigator-initiated research consultation services
  - Education and researcher training
  - Quality and safety management
  - Project management
  - Study monitoring service
  - Audit assistance
  - Standard operating procedures
  - Online Resource Center
  - Institutional Review Board (IRB)
  - Additional Services
- Contact Us

Text size: − +

# Who We Are

"We assist investigators, coordinators and other research team members throughout the course of a research project, from the study's inception to close out."
– Dr. Candice Sareli

The Office of Human Research at Memorial Healthcare System was founded in September 2011 to centralize and oversee the research efforts at Memorial. Since then, the Office of Human Research has developed a comprehensive infrastructure for research studies at Memorial and is promoting research to improve patient care by testing the effectiveness of various medications and devices.

We assist investigators, research coordinators and other team members throughout the course of a research project, from the study's inception to close out.

By providing the necessary infrastructure to Memorial researchers, including education, training and support, we conduct clinical studies in a way that promotes safely, ethically, efficiently and cost effectively.

Our vision is to offer a clinical trial to any patient who walks through our doors and to support any physician who wants to perform research within the Memorial Healthcare System.

With more than 26 full-time employees, our department oversees research in more than 120 active, federal and industry-funded studies across the Memorial Healthcare System in such areas as:

- Cardiovascular disease
- Cystic fibrosis
- Endocrinology
- Oncology (including breast, lung, head and neck, gastro-intestinal, gynecological, hematological, melanoma, sarcoma and glioblastoma studies)

With the support of the Office of Human Research, Memorial investigators have participated in studies of several drugs for various indications, some of which have since garnered FDA approval. These include:

- Bevacizumab (Avastin)
- Crizotinib (Xalkori)
- Everolimus (Afinitor)
- Ipilimumab (Yervoy)
- Lapatinib (Tykerb)
- Pertuzumab (Perjeta)
- TDM-1 (Kadcyla)

# Our Leadership

The Office of Human Research is led by Candice Sareli, MD, Chief Medical Research Officer, and comprised of the following team members:

- **Clinical Research Nurse Manager**
  Cheryl Habaue
- **Director of Research Operations**
  Nithya Sundararaman
- **Compliance and Monitoring Officer**
  Melissa McLennon
- **Finance Team**
  Finance Director – Nadia Green
  Financial Analyst – Lydia Nuñez
- **Research Specialists**
  Sharon Berbick – Adult Oncology
  Ana Bittencourt – Adult Oncology
  Tenille Byrd – Adult Oncology
  Kimberly Campbell – Adult Oncology
  Jayme Ion – Adult Oncology
  Gerri Robinson – Adult Oncology
  Mihaela Roldan – Adult Oncology
  Carleen Steinberg – Adult Oncology
  Sherry Wilson – Adult Oncology
  Dawn Nardiello – Adult Cardiovascular (MCVI)

Vivian Bango-Sanchez – Cystic Fibrosis
Bonnie Kissel – Cystic Fibrosis
Amanda Sorunmu – Pediatric Cardiovascular
Paulette Smith – Pediatric Endocrine and Sickle Cell
Doris Alaby – Pediatric Immunology
Helen Convis – Pediatric Oncology
Carolina Giraldo – Pediatric Oncology
- **Research Coordinators**
  Lindita Burba
  Sherill Borrows
  Jaja Caampued
  Denise Caron
  Jill Granado
  Jennifer Thompson

# Our Research Physicians

Below is a list of physician researchers participating in active research protocols at Memorial. *Indicates physicians with investigator-initiated research.*

## Adult Cardiovascular
Daniel Benhayon-Lanes, MD
John Cogan, MD
Ioana Dumitru, MD
Enrique Gongora, MD
Jonathan Roberts, MD

## Adult Oncology
Anna Abraham, MD
Marcelo Blaya, MD
Aurelio Castrellon, MD
Pablo Ferraro, MD
Daren Grosman, MD
Robert Hirsch, MD
Brian Hunis, MD
Atif Hussein, MD
Manuel Martinez Rio, MD
Adriana Milillo Naraine, MD
Neil Nagovski, MD
Luis Raez, MD*
Michel Vulfovich, MD*
Frederick Wittlin, MD

## Cystic Fibrosis
Juan Martinez, MD Galia Napchan-Pomerantz, MD Hershel Scher, MD

## Pediatrics
Paul Benke, MD
Gary Kleiner, MD
Robin L. Nemery, MD

## Pediatric Endocrinology
Sarah Hart-Unger, MD
Manuela Almaguer, MD
Robin Nemery, MD

## Pediatric Nephrology
Alexandru Constantinescu, MD

## Pediatric Oncology
Carmen Ballestas, MD
Brian Cauff, MD
Iftikhar Hanif, MD
Deborah Kramer, MD
Kerice Pinkney, MD
Anne Schaefer, MD

## Pediatric Thoracic Surgery
Steven Bibevski, MD*
Frank Scholl, MD

## Radiation Oncology
Angela Babbo, MD
Ana Botero, MD
Ignacio Castellon, MD
Maria Ciccia, MD
Shervin Karimpour, MD
Sri Sundararaman, MD

## Stroke
Hoang Duong, MD
Brijesh Mehta, MD

Share

www.mhs.net/research/who-we-are-physician.cfm

Bethel Steindel-Kopp, MD

**Pediatric CVS**
Kak-Chen Chan, MD
Alexandru Constantinescu, MD
Larry Latson, MD

**Thoracic Surgery**
Mark Block, MD

# Contact Us

Memorial Healthcare System
3501 Johnson Street
Hollywood, Florida 33021
(954) 987-2000
Contact Us Online

- Find a Doctor
- Schedule an Appointment

# Locations

- Memorial Regional Hospital
- Memorial Regional Hospital South
- Joe DiMaggio Children's Hospital
- Memorial Hospital West
- Memorial Hospital Miramar
- Memorial Hospital Pembroke

# Links

- En Español
- Sitemap
- Donate Now
- Event Calendar
- Health Professionals

# Connect With Us



# Legal & Policy

- Disclaimer

www.mhs.net/research/who-we-are-physician.cfm

- <u>Privacy Policies</u>

© 2016 Memorial Healthcare System - All rights reserved.